IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

2014 JUL -7  P 12: 08

| | | |
|---|---|---|
| Carl Sheppard, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:13-1027-RMG |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) | **ORDER** |
| | ) | |
| Defendant. | ) ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Social Security disability benefits. In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 16, 2014, recommending that the decision of the Commissioner be affirmed. (Dkt. No. 15). Plaintiff filed no objections to the R & R. The Court reviewed the entire record to confirm the decision of the Commissioner was supported by substantial evidence and was free of legal error. For reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the R & R to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1), (2).

## Discussion

Plaintiff was diagnosed with hairy cell leukemia in July 2011 by Dr. Steven Madden, a board certified hematologist and oncologist, and admitted to Lexington Medical Center on October 3, 2011, for a multi-week administration of chemotherapy. Tr. 266-70, 289-90, 362-66. Plaintiff developed during his hospitalization various complications from the administration of the chemotherapy, involving unexplained fevers and a rash, and a consulting infectious disease specialist observed that "[u]nfortunately, I think this is a case of what can go wrong, will." Tr.

292-93. Following Plaintiff's discharge from the hospital, his underlying cancer appeared to respond to the chemotherapy and went into remission but he began complaining of peripheral pain. On December 19, 2011, Dr. Madden documented Plaintiff's complaint of neuropathy in his fingers and he prescribed hydrocodone to address the patient's pain. Tr. 330, 383. When Plaintiff was seen by Dr. Madden on January 23, 2012, he was then complaining of pain in his hands and feet, which Dr. Madden described as "mild type peripheral pain." Tr. 344. Dr. Madden continued treating Plaintiff's symptoms with hydrocodone. *Id.*

Plaintiff was seen again by Dr. Madden on March 26, 2012, who documented that the "leukemia [was] essentially in remission" but "he still has difficulties with neuropathy type symptoms in the hand and feet" and continued the hydrocodone for the pain. Tr. 359. Dr. Madden confirmed on June 25, 2012, that Plaintiff "still is having difficulties with neuropathy type symptomology in his hands and feet" and was then complaining of the development of cervical neck pain. Tr. 388. The hydrocodone was continued.

Dr. Madden completed a questionnaire assessing Plaintiff's condition on July 12, 2012. He diagnosed Plaintiff as having "neuropathy [secondary] to chemotherapy" that produced pain and weakness and noted that the pain medication prescribed to Plaintiff caused drowsiness and sedation. Tr. 402-04. Dr. Madden opined that Plaintiff could sit no longer than four hours and stand or walk less than two hours in an eight-hour day. He also stated that Plaintiff could lift less than ten pounds rarely, could never lift any greater weight, and would likely be absent four days per month due to his condition. *Id.* If Dr. Madden's opinions were credited, Plaintiff would likely be disabled under the Social Security Act.

The record includes very abbreviated reviews of Plaintiff's medical records by non-

examining and non-treating physicians, Dr. Sehan El-Ibiary and Dr. Norman Fox. Neither of the chart reviewers had access to all of Dr. Madden's office notes or questionnaire responses when they rendered their opinions and offered no opinions regarding the impact of Plaintiff's chemotherapy induced neuropathy. Tr. 75-81, 104-07. Thus, the sole expert opinion in the record regarding the impact of Plaintiff's neuropathy was provided by the claimant's treating specialist physician, Dr. Madden.

Plaintiff testified before the Administrative Law Judge ("ALJ") at a hearing conducted on September 17, 2012, explaining that he had "a lot of pain in my hands, my feet, my neck" and "any kind of movement hurts." Tr. 61. Plaintiff also explained that the medication he takes to address his pain symptoms, which is administered every six hours, make him drowsy for "a couple of hours." Tr. 62. He further testified that he had difficulty because of his neuropathy grasping or holding objects in his hands or standing for any length of time. Tr. 62. Plaintiff also testified that he is able to do limited chores around the house by engaging in activity for twenty minutes and then resting for thirty minutes to one hour. Tr. 66.

The ALJ found that Plaintiff's residual peripheral neuropathy placed severe limitations upon him but he nonetheless retained a residual functional capacity for light work. Tr. 20-21. In reaching that conclusion, the ALJ found Plaintiff less than fully credible because (1) there was no record he had complained of severe fatigue in Dr. Madden's records; (2) Plaintiff had not sought treatment from a physician specializing in neuropathy and elected to receive his treatment from Dr. Madden; (3) Plaintiff had not requested treatment "more significant than the pain medication"; (4) Dr. Madden had not conducted "electromyographic or nerve conduction studies"; and (5) Plaintiff had not been prescribed "any medication that is designed to treat

neuropathy." Tr. 23.

The ALJ also gave "little weight" to the opinions of Plaintiff's treating specialist physician, Dr. Madden, because (1) his opinions were not supported by "objective evidence," such as "reduced strength or sensation in claimant's extremities"; (2) Dr. Madden stated in one note that Plaintiff's symptoms were "mild"; and (3) there were no objective findings of Plaintiff's alleged cognitive or manipulative deficits. Tr. 23-24. Further, since the chart reviewers "failed to consider the claimant's neuropathy," the ALJ also gave "little weight to these opinions." Tr. 24.

The ALJ's credibility analysis and rejection of the opinions of Plaintiff's specialist treating physician are premised on various facts upon which there is no basis in the record. First, the ALJ appears to presume that Dr. Madden, a board certified oncologist, would not be qualified to manage and treat chemotherapy induced peripheral neuropathy, a common complication of chemotherapy. Second, the ALJ appears to presume that the treatment modality undertaken by Dr. Madden, administration of an opioid pain medication, would not represent an appropriate treatment for this condition. Third, the ALJ appears to presume that Dr. Madden's decision not to conduct certain diagnostic tests indicated that he either did not know what he was doing or did not regard the Plaintiff's condition as very serious. Tr. 23. The ALJ offers no basis for his questioning of Dr. Madden's expertise and treatment strategy, and it is clearly improper for the ALJ to attempt to substitute his medical opinions for those of a treating physician. *See Walker v. DOWCP*, 927 F.2d 181, 184 n. 4 (4th Cir. 1991) ("an ALJ cannot substitute his or her opinion for that of a physician"); *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("While an administrative law judge is free to resolve issues of credibility as to lay

testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician . . . ."). Reversal and remand are obviously necessary to evaluate the expert opinions in the record under the standards of the Treating Physician Rule and without the ALJ interjecting his own medical opinions or presumed expertise into the weighing of the medical testimony.

The ALJ found that Dr. Madden failed to provide specific evidentiary support for a number of his findings, including limitations on Plaintiff's ability to sit and stand, lift more than ten pounds, cognitive functions, and manipulative deficits. Tr. 23-24. There appears to the Court to be some merit to this portion of the administrative decision. A claimant in a Social Security disability claim has the duty to furnish all relevant medical evidence and to carry the burden of proving that he or she is disabled. 20 C.F.R. § 404.1512(a). Congress, however, imposes upon the Commissioner to "make every reasonable effort" to obtain "all medical evidence" from treating physicians. 42 U.S.C. § 423(d)(5)(B). This requires the ALJ to "develop a full and fair record" and to correct any significant gaps or "deficiencies" in the record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991); *Hannah-Walker v. Colvin*, No. 2:12-cv-61-PRC, 2013 WL 5320664, at *15 (N.D. Ind. Sept. 23, 2013); *Rivera v. Astrue*, No. 10 CV 4324(RJD), 2012 WL 3614323, at *12 (E.D.N.Y. Aug. 21, 2012); *Washington v. Astrue*, No. 3:08-cv-2631-DCN, 2010 WL 3023048, at *3 (D.S.C. July 29, 2010). This affirmative duty exists where "such evidence is necessary to a fair determination of the claim." *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982); *Tucker v. Bowen*, No. CV-87-3487, 1989 WL 10564, at *4 (E.D.N.Y. Feb. 2, 1989). While the ALJ's duty to complete the record is heightened when the claimant is *pro se*, the "duty exists even when the claimant is represented by counsel.

*Rivera*, 2012 WL 3614323, at *12.

Further, a regulation in effect at the time Plaintiff applied for disability required that where information from a treating physician "is inadequate for us to determine whether you are disabled . . . [w]e will first recontact your treating physician . . . to determine whether additional information is readily available." 20 C.F.R. § 404.1512(e)(1). This regulation was modified following the Plaintiff's filing of his disability application and remains binding on the Commissioner. It is notable that when modifying this regulation for cases filed after January 23, 2012, the Commissioner made clear that in the future "we would still expect adjudicators to recontact a person's medical source" when "recontact is the most effective and efficient way to resolve an inconsistency or insufficiency." 77 Fed. Reg. 10651, 10652 (Feb. 23, 2012).

On remand, the ALJ should recontact Dr. Madden and determine what information he relied upon in reaching the various opinions expressed in the July 2012 responses to the questionnaire. Tr. 402-04. This newly received information should then be considered in weighing Dr. Madden's opinions under the standards of the Treating Physician Rule and without the ALJ injecting any presumed medical expertise into his assessment of the opinions of the treating physician.

## Conclusion

Based upon the foregoing, the Court reverses the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the agency for further action consistent with this opinion.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

July 7, 2014
Charleston, South Carolina

-9-